(Decided 15th November, 1889.)

---

## ALEXANDER M. FULFORD vs. CHARLES SPAIGHT KEERL, (widow.)

### Usury.

If the mortgagee of property while he remains mortgagee, choses to question any prior lien or incumbrance thereon he may do so; but if he becomes the purchaser of the property under proceedings for foreclosure of his mortgage, and takes a deed for it "subject to the yearly ground rent" thereon, his position is thereby changed, and he will not be allowed to avail himself of the fact that the transaction by which said rent was created was tainted with usury.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued for the appellee before ALVEY, C. J., STONE, MILLER, and McSHERRY, J., and submitted on brief for the appellant.

*Francis K. Carey, John E. Semmes,* and *John N. Steele,* for the appellant.

The appellant does not controvert the well established doctrine of this Court, that when an equity of redemption, arising out of a usurious mortgage is *assigned,* and the assignee, either by express covenants contained in the assignment, (*Hough vs. Horsey,* 36 *Md.,* 181, 184,) or under an agreement capable of being established by parol, (*Mahoney vs. Mackubin,* 54 *Md.,* 268, 273,) distinctly *assumes* the payment of the usurious interest, and the payment of the usurious interest is part of the *consideration* of the purchase, and it is the distinct *intention* of both parties to the assignment that the right to plead the usury is to be *denied* to the assignee, then and in such a case the *assignee* will not be heard to plead the usurious character of the transaction. That this is a true and fair statement of the doctrine, will appear to the Court from an examination of all the cases upon which the lower Court relied. The following is a complete list of them: *Mahoney vs. Mackubin,* 54 *Md.,* 268, 273; *Hough vs. Horsey,* 36 *Md.,* 184; 2 *Jones on Mortgages, sec.* 1494; *Bridge, et al. vs. Hubbard,* 15 *Mass.,* 103; *Morris vs. Floyd,* 5 *Barb.,* 135; *Mason vs. Lord,* 40 *N. Y.,* 485 ; *Hardin vs. Hyde,* 40 *Barb.,* 435; *Freeman vs. Auld,* 44 *N. Y.,* 51.

The appellant in this case was not a mere assignee of the equity of redemption, but was a mortgagee. As such, he would be entitled to the benefit of the doctrine that a conveyance, by way of mortgage, passed to the mortgagee all the rights of the mortgagor in the subject-matter of the mortgage.

It was the duty of the trustee, under the foreclosure proceedings, to pass to the purchaser all the title and interest of all the parties to the proceedings on the lot in question; nothing more could be granted by him, and nothing less would satisfy the decree appointing him.

The language of the deed from Preston, trustee, to
Fulford can, therefore, import nothing.  As a matter of
fact, however, it simply identifies the property as "the
same lot conveyed to the said Volkmar,   *   *   *   sub-
ject to the yearly ground rent of $560.00."

The mortgagee was forced to buy the property to pro-
tect his loan, and the payment of the usurious interest
could not, therefore, in any sense have "formed part of
the consideration of the purchase."

There is really nothing, therefore, to bring this case
within the doctrine above quoted.  It presents the simple
case of an assignment of an equity of redemption under
a usurious mortgage, and therefore falls directly within
the following cases:  *Gaither vs. Clarke*, 67 *Md.*, 18;
*Andrews vs. Poe*, 30 *Md.*, 485; *Lloyd vs. Scott*, 4 *Peters*,
228.

*William S. Bryan, Jr.*, for the appellee.

Fulford, on his own showing, loaned his money on the
security of the lot as a leasehold, and bought it in, still
believing it was a leasehold, and never even heard until
years afterwards that there was any illegality in the
lease.  As he got all that he bargained for, and all that
he paid for, it is hard to see how he has any cause to
complain, even if Volkmar were oppressed by Burns.  If
Volkmar, from a sense of honor, was unwilling to plead
usury against Burns, and only pledged to Fulford his
interest in the property, "subject to the payment of the
annual rent," would it not be a fraud on Volkmar's
rights to let Fulford, on the face of this limitation in
the mortgage, plead usury?

Usury, by all the authorities, is a personal defence
which can only be made by the borrower or those in
legal privity with him.  It has been held that a general
assignee, *i. e.*, one to whom the property is assigned in
general terms, or who takes without any express or im-

plied understanding that the amount of the usurious lien is to be treated as valid—stands in such privity with the borrower, and can make the defence. *Andrews vs. Poe*, 30 *Md.*, 485; *Trumbo vs. Blizzard, et al.*, 6 *G. & J.*, 18; *Gaither vs. Clarke*, 67 *Md.*, 18; *Lloyd vs. Scott*, 4 *Peters*, 205; 1 *Jones on Mortgages*, sec. 644.

But common honesty, as well as an overwhelming weight of authority, require that when an assignee in consideration of the usurious lien being treated as valid, gets the property cheaper, when the amount of such incumbrance is deducted from the purchase money, he should be estopped from impeaching its validity. *Dix vs. Van Wyck*, 2 *Hill*, (*N. Y.*,) 522; *Burlington Mutual Loan Association vs. Heider*, 55 *Iowa*, 420; *Perry vs. Kearns*, 13 *Iowa*, 174; *Cramer vs. Lepper, et al.*, 26 *Ohio State*, 59; *Sellers vs. Botsford*, 11 *Mich.*, 59; *Essley, et al. vs. Sloan, et al.*, 116 *Illinois*, 391; *Thomas vs. Mitchell*, 27 *Wisconsin*, 414; *Reed vs. Eastman*, 50 *Vermont*, 67; *Betteley vs. Reed*, 4. *Q. B.*, 511; *Green vs. Kemp*, 13. *Mass.*, 515; *Conover vs. Hobart*, 24 *N. J. Eq.*, 123; *Union Dime Savings Institution vs. Wilmot*, 94 *N. Y.*, 228; *Freeman vs. Auld*, 44 *N. Y.*, 51.

And this question has been twice decided by this Court. *Hough vs. Horsey*, 36 *Md.*, 184; *Mahoney vs. Mackubin*, 54 *Md.*, 268.

In the case at bar the property is mortgaged, subject to the *payment* of the annual rent; only what was left was pledged. At the sale under this mortgage, when the leasehold was all that the trustee had power to sell, and, of course, all any one thought he was selling, Fulford bought in the property for nine thousand dollars; that is, he gave nine thousand dollars for a lot that cost seven years before $3,500, improved by a dwelling that cost over $15,000, "subject to the yearly ground rent of $560." If he is allowed to attack this ground rent, will he not get the property "for less than he agreed to give

for it?'' Can any one who reads this record doubt that when the mortgage to Fulford was drawn, both Volkmar and Fulford believed and intended that the ground rent was a valid lien upon the property, and that the mortgage loan was negotiated on that basis?

STONE, J., delivered the opinion of the Court.

This case arises on a demurrer to a bill in equity, and the facts conceded by the demurrer are these:

More than twenty years ago George D. Volkmar borrowed of William F. Burns seven thousand dollars, for which he agreed to pay him interest at the rate of eight per cent. per annum. In order to evade the usury law, instead of a mortgage, Burns took from Volkmar a deed in fee of his house and lot, and in turn executed to him a ninety-nine year lease, renewable for ever, upon the payment of the yearly rent of five hundred and sixty dollars, with a covenant in said lease that at any time within six months after the expiration of three years from the date of said lease, upon the payment to the said Burns of the sum of seven thousand dollars, he, the said Burns, would extinguish and merge said rent. The creation of this ground rent was a mere device to conceal the loan of money at a usurious rate of interest, and was, in fact, but a loan of seven thousand dollars for three years, with interest at the rate of eight per cent.

Some two or three months before the expiration of the three years mentioned in the lease from Burns to Volkmar, Volkmar borrowed from the appellant, Fulford, the sum of nine thousand dollars, and executed a mortgage on his leasehold estate, payable in one year from date, to secure the payment thereof. This mortgage, not being paid at maturity, was foreclosed by the mortgagee, Fulford, who bought in the property for nine thousand dollars, *subject to the ground rent of five hundred and sixty*

*dollars.* This sale was made, and the property conveyed to the appellant Fulford in 1873.

In the year 1880 Burns sold the fee in the property to the appellee, Keerl, who purchased the same in good faith, and without any knowledge that the original transaction between Burns and Volkmar was usurious. Shortly before the sale to the appellee, Keerl, Fulford, for the first time, discovered the true nature of the ground rent, and demanded a deed from Burns in fee upon the tender to him of seven thousand dollars, less the sum of two per cent. which had been illegally exacted. But Burns refused to do so, unless he was paid the sum of eight thousand dollars, and the rent that had already accrued, and soon afterward sold the fee to the appellee, Keerl, for eight thousand dollars. There being rent due, and in arrear, the appellee brought ejectment for the property.

The bill prayed for an injunction against the further prosecution of the suit by the appellee, and for an account, &c. Upon demurrer to the bill it was dismissed and Fulford has appealed.

In *Hough vs. Horsey,* 36 *Md.,* 181, this Court decided that where a purchaser bought property for a sum certain, and in addition thereto agreed to pay off a mortgage that was upon the property at the time of sale, that such purchaser would not be allowed, in a Court of equity, to set up the defence that the mortgage was usurious. That the mortgagor might avail himself of such a defence, but that where the mortgagee sold the property for a specified amount in money, and the purchaser also agreed, as expressed in the deed, to pay off a mortgage then upon it for two thousand dollars, the purchaser was estopped from setting up the defence that the mortgage was tainted with usury. In that case the whole contract appeared by the deed.

In *Mahoney vs. Mackubin, Trustee,* 54 *Md.,* 268, it was proved *aliunde.the deed* that a mortgage then existing

upon the farm, was a part of the consideration for the purchase of the farm, and the Court, affirming the case of *Hough vs. Horsey,* decided that the purchaser would not be heard in equity to charge usury, but that must be left to the mortgagor and mortgagee. The only difference between these two cases consists in the fact that in one it appeared upon the face of the deed that the payment of the mortgage was a part of the consideration, and in the other, that fact was proved by other evidence. The reason assigned for the decision is the same in both cases. To allow the purchaser to claim rebate in the amount he has expressly agreed to pay, would be to allow him to repudiate his own agreement. If a purchaser voluntarily, and without being induced so to do by any fraud or deceit, promises and agrees, as a part of the consideration for his purchase, to pay off an existing lien on the property so purchased, he will not be allowed to say that the lien is larger than it ought to have been. He, the purchaser, is not injured by the usury. He buys the land at a specified price, and this price he is bound by every principle of fair dealing to pay.

In the case before us the mortgage from Volkmar to Fulford recited *that the premises were subject to this ground rent of* $560. When Fulford bought it, and the trustee, Preston, conveyed it to him, the deed from the trustee conveyed it to him "subject to the yearly ground rent of $560." The acceptance of this deed from the trustee who sold the property, in connexion with the recital in the mortgage, amounted to an express agreement on the part of Fulford to pay this ground rent. He then agreed to pay for the property the sum of nine thousand dollars *and this ground rent.* It is entirely immaterial whether he did or did not know that the taint of usury attached to it. He did not know it, at the time of his purchase, but he was then willing to pay the amounts agreed upon.

This case, therefore, comes directly within the principle of the two cases we have cited.

There is no doubt, as was said in *Hough vs. Horsey*, that the purchase of the mere equity of redemption of a mortgagor, without any reference whatever to the liens upon the property, would present a different case. In such a case the purchaser, having made no agreement to the contrary, might well scrutinize the liens upon his purchase. In such circumstances the purchaser occupies the position of the mortgagor, and no rule of law, or equity would prevent his testing the validity of the liens to the same extent that the mortgagor himself might do.

So as this Court said in *Gaither vs. Clarke*, 67 *Md.*, 18, a *subsequent mortgagee* may question the title of prior incumbrances, and take advantage of a taint in an older incumbrance. If the complainant, Fulford, while he remained a *mortgagee* of this property, had chosen to question any prior lien or incumbrance on the same property, he would have had the right to do so. But he is no longer a *mortgagee* of this property. He is the absolute owner. He voluntarily changed his position in reference to it and agreed to buy it for a sum certain and *to pay this ground rent*. The mortgagee is merged in the owner. He stands precisely as any other purchaser would have stood who had agreed to pay for the property nine thousand dollars and take it subject to a ground rent for $560 per annum. A Court of equity will not aid him to nullify his own agreement.

The decree dismissing the bill will be affirmed, with costs.

*Decree affirmed.*

(Decided 15th November, 1889.)